IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **EMMA SEELEY, ABIGAIL MINNEAR, NOAHSTEFANO MAILAT, PASCUAL RIVAS BUSTAMANTE, and ROBERT HELSEL,** | |
| **Plaintiffs,** | Civil Action No. 1:26-cv-02576-SCJ |
| **vs.** | |
| **CARBONARA, LLC d/b/a Carbonara Trattoria; RAFIK CRESSATY; and PATRICK CRESSATY,** | |
| **Defendants** | |

## FIRST AMENDED COMPLAINT[1]

Plaintiffs Emma Seeley, Abigail Minnear, Noahstefano Mailat, Pascual Rivas Bustamante, and Robert Helsel bring this Fair Labor Standards Act case against Defendants Carbonara, LLC d/b/a Carbonara Trattoria ("Carbonara"); and Rafik Cressaty; and Patrick Cressaty (collectively "Defendants"), showing the Court as follows:

### INTRODUCTION

1. In this Fair Labor Standards Act ("FLSA") action, Plaintiffs allege that Defendants failed to pay them minimum wages as required by the FLSA, 29 U.S.C. § 206(a).

[1] Plaintiff Seeley files this amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(A) to add Plaintiffs Minnear, Mailat, Bustamante, and Helsel.

2. Plaintiffs also allege that Defendants violated the FLSA by failing to *timely* pay minimum wages, with the result that liquidated damages in the same amount as the untimely minimum wage payments remain outstanding.

3. Plaintiffs Seeley, Minnear, Helsel, and Bustamante also allege that Defendants improperly retained 23% of their tips, in violation of 29 U.S.C. § 203(m)(2)(B).

4. Plaintiffs Seeley, Mailat, Minnear, and Bustamante also bring breach of contract claims under Georgia law against Defendant Carbonara in connection with unpaid wages exceeding Defendants' the federal minimum wage obligations.

5. Plaintiff Seeley also bring a claim for violation of 29 U.S.C. § 7434 for fraudulent filing of tax information returns. Defendants willfully filed or caused to be filed a fraudulent tax information return with respect to her 2025 income in which it vastly underreported her pay and misrepresented her pay as non-employee compensation rather than as wages.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b), and 28 U. S.C § 1331, because this case arises under the Fair Labor Standards Act, a federal statute that affects interstate commerce.

7. Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendants reside and conduct business in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

8. Plaintiff Seeley is a natural person currently residing in Fulton County, Georgia.

9. Plaintiff Minnear is a natural person currently residing in Fulton County, Georgia.

10. Plaintiff Mailat is a natural person currently residing in DeKalb County, Georgia.

11. Plaintiff Bustamante is a natural person currently residing in Gwinnett County, Georgia.

12. Plaintiff Helsel is a natural person currently residing in Hall County, Georgia.

13. Defendant Carbonara, LLC is a domestic limited liability company with its primary office in Dekalb County, Georgia.

14. Carbonara can be served with process through its registered agent, Rafik Cressaty, at 5499 Chamblee Dunwoody Road, Suite 710, Dunwoody, GA, 30338.

15. Carbonara is subject to the personal jurisdiction of this Court.

16. Defendant Rafik Cressaty is a natural person residing in Fulton County, Georgia.

17. Rafik Cressaty can be served with process at 129 Alderwood Hill, Atlanta, GA 30328, or wherever he may be found.

18. Rafik Cressaty is subject to the personal jurisdiction of this Court.

19. Defendant Patrick Cressaty is a natural person residing in Fulton County, Georgia.

20. Patrick Cressaty can be served with process at 8150 Hewlett Road, Atlanta, GA 30350, or wherever he may be found.

21. Patrick Cressaty is subject to the personal jurisdiction of this Court.

## FACTUAL BACKGROUND

**FLSA Coverage and Employment Relationship**

22. Carbonara operates the Italian restaurant "Carbonara Trattoria" located at 5499 Chamblee Dunwoody Road, Dunwoody, GA 30338.

23. Seeley worked as a server and bartender at Carbonara Trattoria from early-December 2025 through early-April 2026.

24. Seeley was hired as a W-2 employee for tax purposes, filling out an IRS Form W-4 at the request of Patrick Cressaty at the outset of her employment.

25. At all relevant times, Carbonara was Seeley's "employer" within the meaning of 29 U.S.C. § 203(d).

26. Minnear worked as a server at Carbonara Trattoria from December 17, 2025, until March 31, 2026.

27. Minnear was also hired as a W-2 employee for tax purposes.

28. At all relevant times, Carbonara was Minnear's "employer" within the meaning of 29 U.S.C. § 203(d).

29. Mailat worked as an expediter at Carbonara Trattoria from approximately August 2025 until April 13, 2026.

30. Mailat was also hired as a W-2 employee for tax purposes.

31. At all relevant times, Carbonara was Mailat's "employer" within the meaning of 29 U.S.C. § 203(d).

32. Bustamante worked as a server at Carbonara Trattoria from January 31, 2025, through January 23, 2026.

33. Bustamante was also hired as a W-2 employee for tax purposes.

34. At all relevant times, Carbonara was Bustamante's "employer" within the meaning of 29 U.S.C. § 203(d).

35. Helsel worked as head bartender at Carbonara Trattoria from the second week of January 2026 through April 10, 2026.

36. Helsel was also hired as a W-2 employee for tax purposes.

37. At all relevant times, Carbonara was Helsel's "employer" within the meaning of 29 U.S.C. § 203(d).

38. At all relevant times, Carbonara had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

39. Specifically, Carbonara has had two or more employees handling or selling food and beverages manufactured outside the State of Georgia and/or shipped from outside the State of Georgia.

40. In 2025, Top Carbonara had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

41. In 2026, Carbonara had or will have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

42. At all relevant times, Carbonara was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 206 (a).

43. At all relevant times, in the course of their duties for Defendants, Plaintiffs used or handled the following, among others, instruments of interstate commerce: computers, cash, cash registers, credit cards, credit card machines, office furniture, office supplies, dishware, glassware, food and beverages.

**Rafik Cressaty is an employer under the FLSA**

44. Defendant Rafik Cressaty is an owner and founding member of Carbonara.

45. At all relevant times, Rafik Cressaty was the highest-level manager of Carbonara.

46. At all relevant times, Rafik Cressaty was involved in the day-to-day business of Carbonara.

47. At all relevant times, Rafik Cressaty managed Carbonara Trattoria almost every Sunday, and occasionally one or two other days of the week.

48. On other days, Rafik Cressaty would show up on the premises for an hour or so and would speak with employees about issues such as their pay or disputes with Patrick Cressaty.

49. At all relevant times, Rafik Cressaty had authority to make business decisions on behalf of Carbonara.

50. At all relevant times, Rafik Cressaty exercised operational control over Carbonara Trattoria.

51. At all relevant times, Rafik Cressaty retained authority to overrule Patrick Cressaty as to matters otherwise delegated to him.

52. At all relevant times, Rafik Cressaty was an "employer" of each of the Plaintiffs within the meaning of 29 U.S.C. § 203(d).

**Patrick Cressaty is an employer under the FLSA**

53. At all relevant times, Defendant Patrick Cressaty has been the general manager of Carbonara.

54. At all relevant times, Patrick Cressaty managed the day-to-day operation of Carbonara Trattoria.

55. At all relevant times, Carbonara vested Patrick Cressaty with supervisory authority over Plaintiffs.

56. At all relevant times, Patrick Cressaty exercised supervisory authority over Plaintiffs.

57. At all relevant times, Patrick Cressaty scheduled Seeley's working hours or supervised the scheduling of Plaintiffs' working hours.

58. At all relevant times, Patrick Cressaty exercised authority and supervision over Plaintiffs' compensation.

59. At all relevant times, Patrick Cressaty had authority to hire employees on behalf of Carbonara.

60. At all relevant times, Patrick Cressaty had authority to terminate employees of Carbonara.

61. At all relevant times, Patrick Cressaty had authority to discipline employees of Carbonara.

62. At all relevant times, Patrick Cressaty acted directly or indirectly in the interest of Carbonara with respect to Plaintiffs.

63. At all relevant times, Patrick Cressaty was an "employer" of each of the Plaintiffs within the meaning of 29 U.S.C. § 203(d).

**FLSA Violation**

64. At all relevant times, Defendants purported to compensate Plaintiffs Seeley, Minnear, Helsel, and Bustamante at the rate of $2.15 per hour plus tips for server work, and at the rate of $20 per hour plus tips for bartender work.

65. At all relevant times, Plaintiffs Seeley, Minnear, Helsel, and Bustamante were "tipped employees" within the meaning of 29 U.S.C. § 203(t).

66. At all relevant times, Defendants purported to utilize the FLSA tip credit with respect to Plaintiffs Seeley, Minnear, Helsel, and Bustamante's server wages.

67. At all relevant times, Defendants purported to compensate Plaintiff Mailat at a fixed hourly rate ranging from $20 to $25 per hour.

68. Throughout Plaintiffs' employment, Defendants consistently failed to pay all Plaintiffs their full hourly wages.

69. Throughout Plaintiffs' employment, Defendants consistently failed to compensate all Plaintiffs on their regular pay dates, delaying their wage payments by months or weeks.

70. Defendants made untimely payments of all Plaintiffs' wages as to nearly every wage payment during the course of their employment.

71. Section 6 of the FLSA (29 U.S.C. § 206) requires that Defendants compensate Plaintiffs at a rate of no less than $7.25 per hour for every hour worked in a work week.

72. During every pay period of Plaintiffs' employment, Defendants failed to timely pay all Plaintiffs minimum wages of $7.25 per hour in each workweek.

73. By failing to pay Plaintiffs' federal minimum wages by the next regular pay period following their performance of work as an FLSA-covered employee, Defendants violated the FLSA's minimum wage requirement as to nearly every pay period during all Plaintiffs' employment for which any wages were paid.

74. On multiple occasions in December 2025, Plaintiff Seeley worked at special events at which General Manager Defendant Patrick Cressaty failed to disburse Plaintiff Seeley's tips to her and instead retained them for himself and/or Carbonara.

75. Throughout their employment, Defendants consistently retained 23% of the tips of Plaintiffs Seeley, Minnear, Helsel, and Bustamante for purposes other than administering a tip pool among tipped employees.

**Breach of Contract**

76. Defendant Carbonara—through its general manager Patrick Cressaty—entered into an agreement with Plaintiffs that they would work at Carbonara Trattoria in exchange for payment of wages.

77. At all relevant times, Carbonara agreed to compensate Plaintiffs at agreed-upon rates.

78. Throughout the course of their employment at Carbonara Trattoria, Plaintiffs fulfilled their obligations under their contracts of employment, performing services as servers and/or bartenders as requested and accepted by Carbonara.

79. Throughout the course of their employment, Carbonara repeatedly failed to pay Plaintiffs' wages, in breach of the employment agreement.

80. To date, Carbonara has failed to pay all earned wages to Plaintiffs Seeley, Mailat, Minnear, and Bustamante.

81. On multiple occasions during her employment, Carbonara—through its General Manager Defendant Patrick Cressaty—repeatedly withheld and retained *all* the tips of Seeley, in breach of her employment agreement.

82. On January 31, 2026, in exchange for her agreement to work a shift during a snow event when no other servers or bartenders could make it to work, Patrick Cressaty promised Plaintiff Seeley that she would be permitted to keep all tips generated between herself and Patrick Cressaty in the course of that shift.

83. Plaintiff Seeley worked that shift as agreed upon but Patrick Cressaty kept all of the tips he generated and never paid them to Plaintiff as promised.

84. On March 27, 2026, Plaintiff Seeley agreed to give Patrick Cressaty a short-term loan of $50 cash so that he could give pay it to another employee as he had no cash on hand.

85. Plaintiff Seeley paid $50 to Patrick Cressaty as agreed, but Patrick Cressaty failed to repay the loan as promised.

**Tax Fraud**

86. Throughout Plaintiff Seeley's employment, Defendants irregularly paid her wages, between direct deposit, personal check, Zelle, and cash.

87. Plaintiff Seeley's wages paid by Carbonara in 2025 totaled in excess of $3,000 (plus many thousands more in tips which were recorded by Defendants and were attributable to her 2025 earnings).

88. In 2026, despite Seeley being a W-2 employee—and having provided a W-4 to Defendants in anticipation of being treated as such—Carbonara issued her an IRS Form 1099-NEC recording (purportedly "non-employment compensation") payments to her in 2025 of only $1,079.18.

89. The 2025 IRS Form 1099-NEC issued by Carbonara to Seeley and filed with the Internal Revenue Service was fraudulent, wildly underreporting Seeley's earnings in 2025.

90. Defendants Rafik Cressaty and Patrick Cressaty intentionally and willfully filed or caused to be filed this fraudulent IRS Form 1099-NEC for the purpose of

their own enrichment by avoiding their payroll tax obligations as employers and to disguise payroll tax withholdings not paid over to the federal government.

## COUNT I — FAILURE TO PAY MINIMUM WAGE PURSUANT TO 29 U.S.C. § 206

## (PLAINTIFFS SEELEY, MAILAT, MINNEAR, AND BUSTAMANTE)

91. At all relevant times, Plaintiff Seeley, Mailat, Minnear, and Bustamante were employees of Defendants covered by the FLSA and entitled to the minimum wage protections set forth in 29 U.S.C. § 206(a).

92. Throughout their employment, Defendants failed to compensate Plaintiffs Seeley, Mailat, Minnear, and Bustamante at an hourly rate above or equal to the minimum wage.

93. Defendants are liable to Plaintiffs Seeley, Mailat, Minnear, and Bustamante for all unpaid minimum wages pursuant to 29 U.S.C. § 216(b).

94. Plaintiffs Seeley, Mailat, Minnear, and Bustamante are entitled to recover liquidated damages in an amount equal to their unpaid minimum wages pursuant to 29 U.S.C. § 216(b).

95. As a result of the underpayment of minimum wages as alleged above, Defendants are liable to Plaintiffs Seeley, Mailat, Minnear, and Bustamante for their litigation costs, including their reasonable attorney's fees, in accordance with 29 U.S.C. § 216(b).

## COUNT II — UNTIMELY PAYMENT OF MINIMUM WAGES

96. At all relevant times, all Plaintiffs were employees of Defendants covered by the FLSA and entitled to the minimum wage protections set forth in 29 U.S.C. § 206(a).

81. Throughout Plaintiffs' employment, Defendants routinely failed to pay their wages on a timely basis.

82. Throughout their employment, Defendants routinely failed to pay Plaintiffs' wages on their next regular pay dates.

83. By failing to timely pay Plaintiff's minimum wages, Defendants have violated the FLSA's minimum wage requirements and are jointly and severally liable to Plaintiffs for liquidated damages in the same amount as their untimely paid minimum wages, plus reasonable attorney's fees and costs of litigation.

## COUNT III — RETENTION OF TIPS

84. Throughout their employment, Defendants retained 23% of the tips of Plaintiffs Seeley, Minnear, Helsel, and Bustamante for purposes other than administering a tip pool among tipped employees

85. On no fewer than two occasions in December 2025, Defendant Patrick Cressaty entirely failed to disburse Plaintiff Seeley's tips to her that she had earned working for Defendants at two special events, retaining them for his own use or that of Carbonara.

86. The FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

87. As a result of this improper retention of Plaintiffs' tips, Defendants are liable to Plaintiffs for the entire amount of the improperly retained tips, and an equal amount as liquidated damages. 29 U.S.C. § 216(b).

## COUNT IV — BREACH OF CONTRACT
## (PLAINTIFFS SEELEY, MAILAT, MINNEAR, AND BUSTAMANTE)
## (DEFENDANT CARBONARA ONLY)

88. At all relevant times, Plaintiffs Seeley, Mailat, Minnear, and Bustamante worked for Carbonara under contracts of employment, for which they were to be paid at agreed-upon rates.

89. Throughout their employment, Carbonara regularly underpaid Plaintiffs Seeley, Mailat, Minnear, and Bustamante their earned wages or entirely failed to pay their wages.

90. Despite months of inquiries and demands for payment by Plaintiffs, Carbonara has still failed to pay the earned wages of Plaintiffs Seeley, Mailat, Minnear, and Bustamante.

91. Plaintiffs Seeley, Mailat, Minnear, and Bustamante are entitled to recover their unpaid wages from Carbonara in an amount to be determined at trial.

92. Because Carbonara has acted in bad faith, has been stubbornly litigious, and has caused them unnecessary trouble and expense, Plaintiffs Seeley, Mailat, Minnear, and Bustamante are entitled to recover their attorney's fees and costs of litigation from Carbonara pursuant to O.C.G.A. § 13-6-11.

**COUNT V — BREACH OF CONTRACT**
**(PLAINTIFF SEELEY)**
**(DEFENDANT PATRICK CRESSATY ONLY)**

93. On March 27, 2026, Seeley entered into an oral agreement with Patrick Cressaty for a short-term, interest-free loan of $50 cash.

94. Seeley paid $50 to Patrick Cressaty as agreed.

95. Patrick Cressaty failed to repay the loan as promised.

96. Seeley is entitled to recover $50 loan from Patrick Cressaty, plus prejudgment interest.

97. Because Patrick Cressaty has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, Seeley is entitled to recover her attorney's fees and costs of litigation from Patrick Cressaty pursuant to O.C.G.A. § 13-6-11.

**COUNT VI — WILLFUL FILING OF FRAUDULENT**
**TAX INFORMATION RETURNS (26 U.S.C. § 7434)**
**(PLAINTIFF SEELEY ONLY)**

89. In 2026, Defendants intentionally, willfully, and fraudulently composed and filed or caused to be filed a fraudulent IRS Form 1099-NEC with the IRS which materially underreported Seeley's pay during the 2025 tax year.

90. This filing of a fraudulent tax information return was committed willfully, in a scheme to reduce Defendants' own payroll and other tax obligations.

91. Because of Defendants' willful filing of a fraudulent tax information return, Seeley is entitled to recover damages from Defendants, jointly and severally, up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as her costs of litigation including her reasonable attorney's fees, pursuant to 26 U.S.C. § 7434.

WHEREFORE, Plaintiffs respectfully pray:

a. That all issues be tried before a jury that are so triable;

b. That the Court issue a judgment declaring that Defendants violated the minimum wage provisions of the Fair Labor Standards Act;

c. That the Court award Plaintiffs an amount to be determined at trial against Defendants, jointly and severally, for unpaid and/or untimely paid minimum wages, plus an additional like amount in liquidated damages, pursuant to 29 U.S.C. 216(b);

d. That Plaintiffs be awarded their costs of litigation, including reasonable attorney's fees, pursuant to 29 U.S.C. 216(b);

e. That the Court issue a judgment declaring that Defendants filed or caused to be filed fraudulent tax information returns with respect to Plaintiff Seeley's earnings in 2025;

f. That the Court award Plaintiff Seeley damages resulting from Defendants' fraudulent tax filings, up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing;

g. That the Court award Plaintiff Seeley her costs of litigation and reasonable attorney's fees pursuant to 26 U.S.C. § 7434(b);

h. That the Court award Plaintiffs all damages arising from Carbonara's breach of their employment contract;

i. That the Court award Plaintiff Seeley $50 arising from Patrick Cressaty's breach of his loan agreement with Plaintiff;

j. That the Court award Plaintiffs their costs of litigation and attorney's fees pursuant to O.C.G.A. § 13-6-11 as to Carbonara and Patrick Cressaty;

k. That the Court award Plaintiffs nominal damages; and

l. That the Court award any other and further relief as the Court deems just and proper.

Respectfully submitted this 17th day of May 2026,

**CALDWELL BRIDGERS & BENJAMIN, LLC**

*s/ Matthew W. Herrington*
Matthew W. Herrington
Georgia Bar No. 275411
Charles R. Bridgers
Georgia Bar No. 080791

Counsel for Plaintiff

1425-A Dutch Valley Place NE
Atlanta, GA 30345
(404) 979-3150
herrington@appliedlegalinsight.com
bridgers@appliedlegalinsight.com